## CIRCUIT COURT OF WASHINGTON COUNTY

Commonwealth-Abingdon
Partners, L.P.

v.

Town of Abingdon

August 25, 2009

Case No. CL08-47

BY JUDGE C. RANDALL LOWE

This matter is before the Court on the Plaintiff's request for the Court to declare that the Plaintiff has secured vested rights to proceed with the development of the project on the property at the intersection of Jonesboro Road and Interstate 81 in substantial conformity with the final site plan presented to the Town of Abingdon Planning Commission on April 23, 2003, and that the Plaintiff may pursue and develop the property in substantial conformity with the final site plan.

The Court conducted a hearing in this matter on November 25, 2008. At the conclusion of that hearing, the record was held open for the parties to take additional evidence. Since that hearing date, the depositions of William Jones taken on January 29, 2009, and Cathi Wingo, taken on January 29, 2009, have been presented to the Court. The Plaintiff filed its final argument on March 20, 2009, and the Defendant filed a reply argument on April 17, 2009. The Plaintiff filed a reply brief on May 4, 2009, and the Defendant's reply brief was filed on May 15, 2009. The Court corresponded with counsel to confirm that all matters are now before the Court and inquired as to the trial transcript that was referenced in the briefs but not made part of the record. Thereafter, the transcript of the trial on November 25, 2008, was filed in the Clerk's office on June 18, 2009.

## Finding of Fact

The Plaintiff, hereinafter referred to as Commonwealth, has an option to purchase the property that is the subject of this action. On November 25, 2002, the preliminary subdivision plat setting forth the planned subdivision of the optioned property was accepted by the Abingdon Planning Commission; this action is confirmed in the record by letter dated November 26, 2002, addressed to Marc Smith, President of Trinity Development, Inc., from Jimmy C. Smith, interim Town Engineer for the Town of Abingdon. (Plaintiff Exhibit # 5, Trial, November 25, 2008.) The Court notes that all further references to exhibits are contained in the record from the November 25, 2008, trial record.

On March 6, 2003, Commonwealth submitted a site plan to the Town of Abingdon. The site plan set forth the plan of development for the optioned property. (Plaintiff Exhibit # 6.) On April 11, 2003, comments from the Planning Director of the Town of Abingdon, Albert C. Bradley, regarding the site plan, were made by letter dated April 11, 2003. (Plaintiff Exhibit # 7.) On April 23, 2003, by correspondence to Albert C. Bradley dated April 23, 2003, Joseph Ferowich with ASG, Inc., responded to the April 11, 2003, comments made by the Town of Abingdon. (Plaintiff Exhibit # 8.) On April 25, 2001, a memo from Albert Bradley was addressed to the members of the Town of Abingdon Planning Commission discussing the final site plan including Article 18-7-3, b of the zoning ordinance which set forth the action to be taken by the Planning Commission on the submission of the site plan to said body. (Plaintiff Exhibit # 9.) On April 28, 2003, the preliminary subdivision plat and final site plan were on the agenda for the members of the Abingdon Planning Commission. On April 28, 2003, the actions of the Abingdon Planning Commission were memorialized by the minutes of said meeting. (Plaintiff Exhibit # 10.)

## Position of the Parties

The Plaintiff takes the position that, as a result of the April 28, 2003, meeting, the final site plan was approved although the recommendation was to deny the final subdivision plat. The Town of Abingdon takes the position that the minutes indicate that the final site plan was contingent upon approval of the final subdivision plat and, therefore, the recommendation to deny the final subdivision plat automatically denied the final site plan.

The Plaintiff maintains that, under its theory, the final site plan was approved and it has diligently pursued the project in reliance on what the Plaintiff alleges is a significant, affirmative government act, which was approving the final site plan. The Plaintiff maintained that it has secured rights to develop the property and, therefore, would not have to comply with the Abingdon Historic Overlay District, which was enacted by the Town of Abingdon effective August 7, 2003.

The Plaintiff maintains that, pursuant to § 15.2-2307 of the Code of Virginia, 1950, as amended, its rights were vested to develop said property in accordance with the final site plat as it met the provisions of said code section. The said section reads, in part, as follows:

§ 15.2-2307. *Vested rights not impaired; nonconforming uses.* Nothing in this article shall be construed to authorize the impairment of any vested right. Without limiting the time when rights might otherwise vest, a landowner's rights shall be deemed vested in a land use and such vesting shall not be affected by a subsequent amendment to a zoning ordinance when the landowner (i) obtains or is the beneficiary of a significant affirmative governmental act which remains in effect allowing development of a specific project, (ii) relies in good faith on the significant affirmative governmental act, and (iii) incurs extensive obligations or substantial expenses in diligent pursuit of the specific project in reliance on the significant affirmative governmental act.

For purposes of this section and without limitation, the following are deemed to be significant affirmative governmental acts allowing development of a specific project . . . (v) the governing body or its designated agent has approved a preliminary subdivision plat, site plan, or plan of development for the landowner's property and the applicant diligently pursues approval of the final plat or plan within a reasonable period of time under the circumstances; or (vi) the governing body or its designated agent has approved a final subdivision plat, site plan, or plan of development for the landowner's property.

*Discussion*

The Court will first look at the issue as to whether the actions of the Planning Commission of the Town of Abingdon created vested rights upon which the Plaintiff would be entitled to rely, subject to showing the Plaintiff

incurred extensive obligations or substantial expenses in diligent pursuit of this specific project in reliance on the significant, affirmative government act. The Plaintiff points out that § 15.2-2307 of the Code of Virginia, 1950, as amended, gives a list of what would be considered significant, affirmative government acts, which includes approval of a subdivision plat or a site plan.

Commonwealth maintains that the acceptance of the preliminary subdivision plat should be considered an affirmative governmental act upon which Commonwealth relied. (Plaintiff Exhibit # 5.) The code section upon which the Plaintiff relies, § 15.2-2307(i) of the Code of Virginia, 1950, as amended, states that vested rights occur if the landowner obtains or is the beneficiary of a significant affirmative governmental act which remains in effect allowing development of a specific project. The preliminary acceptance of the subdivision plat was withdrawn by the Town of Abingdon Planning Commission at the April 28, 2003, meeting; so an affirmative governmental act did not remain in effect. Further, paragraph (v) of said statute requires the landowner, after approval of the preliminary subdivision plat, to diligently pursue approval of the final plat. In other words, Commonwealth could not just rely on the approval of the preliminary subdivision plat. Therefore, the Court finds that the acceptance of the preliminary subdivision plat and the ultimate withdrawal of said acceptance did not create a significant affirmative governmental act upon which Commonwealth could rely. The Court notes the understanding that the Planning Commission only makes a recommendation to the Town Council as to the subdivision plat, but clearly in this case withdrew their original recommendation for acceptance.

Next, the Court will review the actions of the Town of Abingdon Planning Commission to determine if the final site plan was adopted, thereby creating a significant, affirmative government act upon which the Plaintiff could rely pursuant to § 15.2-2307 of the Code of Virginia, 1950, as amended. The final site plan is on record as Exhibit Number P6.

The Court has reviewed the option to purchase real property, placed in evidence as Exhibits P1, P2, and P3. The Court notes there is not a deed in evidence which contains a metes and bounds description of the optioned property, but attached as an exhibit to Exhibit Number P1 and P3 is a diagram where it appears the acreage is noted on those drawings as a single piece of property consisting of 55.32 acres.

The Court next reviews the Plaintiff's Exhibit Number 6, which is purported to be the final site plan, although it is labeled Site Paving Plan. The Court notes, in review of this plan, that the property shows a metes and bounds description of the property, with the property divided into

approximately six different parcels, each described separately by a metes and bounds description on said plat. The Court notes that, by letter dated April 11, 2003, Albert C. Bradley, Director of Planning for the Town of Abingdon writes to Mr. Marc Smith, Abingdon J. T. Partners, L.L.C., at Plaintiff's Exhibit Number 7, regarding a preliminary review of the site plan and nineteen comments about the plan. At the end of the letter, Mr. Bradley states, "once the above questions are answered, you may submit your revised final site plan per § 18-7-3 of the site plan ordinance." Thereafter, by letter dated April 23, 2003, Jay Joseph Ferowich, Vice-President of Engineering with ASG, Inc., responded to Mr. Bradley's letter of April 11, 2003, addressing each of the nineteen concerns set forth in Mr. Bradley's letter. Thereafter, by memorandum from Al Bradley, Director of Planning to the members of the Town of Abingdon Planning Commission, dated April 25, 2003, Mr. Bradley transmits to the Planning Commission members his letter of April 11, 2003, the response dated April 23, 2003, and the April 25, 2003, memo and sets forth Article 18-7-3, b of the zoning ordinance as instructions to the Planning Commission, which Article states as follows:

b. Planning commission approval and action:

1. For those plans which are to go before the planning commission, four additional copies shall be submitted to the director of planning prior to the next regularly or specially scheduled planning commission meeting. The director of planning shall prepare recommendations for the planning commission which shall be based upon the purpose, intent, and regulations set forth in this article. The recommendations shall be sent to the applicant prior to the planning commission meeting.

2. The planning commission may approve, approve subject to specific conditions, or disapprove the site plan. The site plan shall be considered approved unless the planning commission acts within sixty days from the date of submission of the final site plan.

3. The director of planning shall notify the applicant in writing of the action taken by the planning commission. In case of conditional approval, the applicant shall make the necessary changes and submit six copies of the final site plan for the signature of the director of planning.

Thereafter, the Town of Abingdon Planning Commission met in regular meeting on April 28, 2003, and the minutes are set forth as Plaintiff's Exhibit Number 10 of the record. The Court will quote the minutes regarding the subdivision plat and site plan in full as the actions of the Town of Abingdon in that meeting are crucial to the issue before the Court:

(5) *Final Plat* (Retail Development; Interstate 81 and Old Jonesboro Road at Exit 14); proposed division of property on Jonesboro Road, owned by Exit Six Associates, Inc., and being developed by Abingdon J T Partners, L.L.C.

There followed a lengthy discussion on the Final Plat stage of the Interstate 81 and Old Jonesboro Road at Exit 14 property. The Final Plat, as prepared by the owners, Exit Six Associates, Inc., and developers, Abingdon J T Partners, L.L.C., and memorandum to the Planning Commission, and in his statements at the meeting noted the following conditions for any approval:

1. The Final Plat must comply with Article 7 and meet the Town's technical and drafting requirements. No response yet on covenants and restrictions; during review, the developer indicated there would be none and that he would provide a letter to that effect. (Section 7.3.11.)

2. The completion of Improvement Plans in conformance with Article 8 acceptable to the Public Works Department for all on-site public infrastructure development in compliance with Article 4 General Requirements and Design Standards (which will after construction and approval be turned over to the Town for maintenance). The work is in progress and under review by the Public Works staff, and has been returned to the developer for plan revision.

3. Construction plans, written easement document and plat for the off-site sanitary sewer line acceptable to the Public Works Department and Town Attorney. (Section 5.8.2.) The plan and profile have been reviewed and returned for revisions; however, the *easement document and plat have not* been received.

4. Approval of the water system by the Washington County Service Authority, as noted by their signature upon the Final Plat. (Section 5.7.) Per Doug Canody, the Service Authority has reviewed the proposed water system and

returned comments to the developer's engineer about two week ago and is waiting for their response. Not yet prepared to sign the plat.

5. Evidence of satisfactory arrangements for performance bonds and payment bonds. (Section 3.4.11.) This has not been received. The developer is to submit an engineer's estimate for the Town's review and approval, upon which the amount of bond will be based.

6. Issuance by VDOT of a commercial entrance permit for frontage improvements on Old Jonesboro Road (VDOT requirements may affect front lot likes). Letter dated April 28, 2003 from Steven B. Buston to Marc Smith denying entrance permit due to safety concerns.

7. Acceptance of the Final Plat by VDOT for the Commonwealth of Virginia to accept the right-of-way being offered on Jonesboro Road and at the I-81 Exit 14 interchange. Letter dated April 28, 2003, from Steven B. Buston to March Smith denying Entrance Permit. Mr. Marc Smith spoke, stating that the proposed development met all of the technical requirements of the Subdivision Ordinance and that they intended to meet on the requirements that were referenced by Mr. Vernon, with the exception of the covenants, as none were planned. Mr. Smith also stated that the letter from Mr. Buston was really outside of the Planning Commission's consideration.

Several members of the Planning Commission expressed some concerns as related to Mr. Buston's letter in regard to the safety of the development, as proposed, and its potential traffic impact on Old Jonesboro Road.

Mr. Morgan made a motion that would resolve that, prior to approval, it is the responsibility of the Planning Commission to assure that the proposed subdivision adequately provides for the following:

1. drainage;
2. provision of water and sewer services;
3. coordination of streets within and contiguous to the subdivision with other existing and planned streets within the general area;
4. bonding, as required by the Town, has been provided for . . . and inasmuch as Abingdon J T Partners,

L.L.C., developers of the proposed Wal-Mart Supercenter at Exit 14, have not presented the following:

1. required signatures on the Final Plat indicating that the Washington County Service Authority will provide water service to the proposed site

2. required sewer easement has not been presented;

3. letter from the Virginia Department of Conservation and Recreation on March 24, 2003, indicated significant variance from the Code of Virginia;

4. letter dated April 28, 2003, from the Virginia Department of Transportation states it will not issue a commercial Entrance Permit requested by Abingdon J T Partners, L.L.C., the Town of Abingdon Planning Commission determines that the proposed development has not complied with significant portions of the requirements of the Town of Abingdon Subdivision Ordinance and, therefore, recommends to the Abingdon, Virginia, Town Council that the requested approval of the Final Plat be denied. The motion was seconded by Mrs. Shuman and unanimously adopted. . . .

(6) *Final Site Plan*; a New Development for: Wal-Mart Supercenter, Interstate 81 and Old Jonesboro Road; Abingdon, Virginia, developer/owner: Abingdon J T Partners, L.L.C.

No action was taken by the Planning Commission on the Final Site Plan for the Wal-Mart Supercenter, as this document depended on the property lines established in the Final Subdivision Plat. Since the Final Subdivision Plat was not approved, no consideration could be given to the Final Site Plan.

The action taken by the Town of Abingdon Planning Commission on the subdivision plat was to recommend to the Abingdon, Virginia, Town Council that the requested approval of the final plat be denied, which vote was unanimous. The minutes indicate that, thereafter, no action was taken by the Planning Commission on the final site plan for the Wal-Mart Supercenter, as the document depended on the property lines established in the final subdivision plat. Since the final subdivision plat was not approved, no consideration could be given to the final site plan.

The Plaintiff maintains that the failure of the Planning Commission to act upon the final site plan within sixty days, in effect approved the plan as set forth in Article 18-7-3(b) of the zoning ordinance of the Town of Abingdon, which states as follows:

the site plan shall be considered approved unless the Planning Commission acts within sixty days from the date of the submission of the final site plan.

Therefore, the Plaintiff maintains that, since the Planning Commission failed to act on the submission of the plan, that, after sixty days, it was approved and the Plaintiff relied upon said approval and proceeded to implement the plan.

The Court looks to see if the site plan could stand alone without the approval of the subdivision plan. The Court notes that the site plan clearly delineates divisions of parcels within the main body of property, which division of property would require approval under the Town of Abingdon subdivision ordinance. Particularly, the Court notes testimony of Tim Scroggin during questioning by the Court from the transcript as follows:

By the Court:

Q. Well, I think what the Town is trying to get to is now you are saying you might not need to subdivide it.

A. Okay.

Q. But I think the question is you were requesting that it be subdivided that night and moving onto the site plan. They were not separated at that point. That was the proposal that you had submitted?

A. I think we submitted two separate proposals at once and got comments to one and no comments to the other

Q. Okay, But your site plan has out parcels, which a subdivision of property —

A. Yes, sir.

Q. — which would require, under the subdivision ordinance of ultimately the zoning ordinance that it be approved as a subdivision before you could do the site plan.

A. Yes, sir.

Q. So you never came before the board and said okay, if you are not going to approve our subdivision plan, we withdraw that and just submit the site plan?

A. No, sir. We were focused on the resolving of the outstanding issues related to VDOT and the other issues. And we, to my knowledge, have never gone back and asked for anything else.

Q. All right.

A. The subdivision plan is nice to have but not necessary to develop the property.

(Transcript, Trial, November 25, 2008, page 100.)

The site plan that was submitted clearly shows divisions of parcels of land that would be a subdivision of the entire acreage, which, under the subdivision ordinance, required approval prior to subdividing. The Court believes the Town of Abingdon Planning Commission correctly reflected in its minutes that, because of the fact that the subdivision document was not approved, they could not proceed on the site plan which indicated a division of the property; therefore, their one vote addressed both issues. Further, the Court notes that Mr. Scroggin indicated to the Court that neither he, nor anyone else acting on behalf of the Plaintiff, indicated to the Planning Commission that, for the site plan to proceed, the division of the land was not necessary nor requested that the site plan be considered without the property being subdivided.

Accordingly, the Court finds that the acts of the Town of Abingdon Planning Commission did not create a significant, affirmative governmental act upon which the Plaintiff could rely. Therefore, the Plaintiff did not acquire any vested rights pursuant to § 15.2-2307 of the Code of Virginia, 1950, as amended, that would avoid compliance with the Abingdon Historic Overlay District provision created August 7, 2003.